UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EMMA FRANK,

    Plaintiff,

    v.

54 NOLL LLC d/b/a Foodtown,

    Defendant.

CASE NO.:

JURY TRIAL DEMANDED

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff EMMA FRANK (hereinafter, the "Plaintiff" or "Ms. Frank"), by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations and governing legal authorities, hereby files this Complaint and sues 54 NOLL LLC d/b/a Foodtown, a New York Limited Liability Company (hereinafter the "Defendant") for injunctive relief, attorneys' fees and costs, including but not limited to disbursements, court expenses and fees, pursuant to 42 U.S.C. § 12181 *et seq*. (hereinafter "Americans With Disabilities Act" or "ADA") and the ADA Accessibility Guidelines 28 C.F.R. Part 36 (hereinafter "ADAAG"), and for injunctive relief and damages, pursuant to the New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), Article 15 of the New York State Executive Law ("Executive Law"), New York State Civil Rights Law ("Civil Rights Law") § 40 (collectively, at times, hereinafter referred to as the "ADA Laws"), and alleges as follows:

## NATURE OF CLAIMS

1. This lawsuit is in response to the inexcusable discriminatory misconduct by Defendant, who own and operate a certain grocery store commonly known as and doing business as Foodtown, located at 54 Noll Street, Brooklyn, New York 11216 (the "Foodtown"), wherein they targeted, harassed and unlawfully removed Ms. Frank, a thirty-one (31) year old female with a disability and as a consequence an individual who utilizes her service animal, to wit: a dog for all daily activities.

2. Upon Plaintiff's arrival at Foodtown, a place of public accommodation, a security guard, who identified himself as an employee and/or representative of Foodtown, acting on behalf of Defendant, unlawfully demanded that Plaintiff produce identification and documentation to verify her right to use her service animal, specifically her dog, within the store. This demand was intentional, patently unlawful under the ADA Laws, and caused Plaintiff, Ms. Frank, significant emotional distress, including pain, embarrassment, and humiliation. Despite the illegality of the demand and having no legal obligation to comply, Plaintiff responded, in substance, that: (1) her dog is a service animal required for her disability, and (2) the animal is trained to perform specific tasks or work related to that disability. Initially, the security guard allowed Ms. Frank to continue shopping. However, moments later, the manager or owner of Foodtown approached Plaintiff and informed her that store policy prohibited dogs, and demanded that she leave the premises immediately. He further stated, in sum and substance that he did not care if the dog was a service animal. Plaintiff was subsequently escorted out of the store with her service animal, preventing her from completing her intended grocery purchases. Defendant's actions caused Ms. Frank additional humiliation, emotional pain, and distress.

3. Foodtown is a place of public accommodation that offers a wide array of facilities, amenities, goods, and services to the general public. However, it imposes unlawful barriers that make it difficult, if not impossible, for patrons with disabilities who rely on service animal to access and enjoy its services in the same manner as individuals without disabilities.

4. Specifically, Defendant has implemented a policy requiring individuals with disabilities who utilize a service animal, such as Ms. Frank, to present documentation and/or identification substantiating her need for a service animal. This policy is a direct violation of the ADA Laws.

5. Furthermore, Defendant has a policy that if a patron does not provide the requested documentation and/or identification, the customer will be removed from the supermarket and prohibited from shopping in the store. This practice constitutes another violation of federal law.

6. Accordingly, this lawsuit seeks to remedy Defendant's discriminatory practices by requiring Foodtown to become fully accessible to Plaintiff and the public at large, ensuring that customers with disabilities can use the facility in the same manner as those without disabilities.

7. The lawsuit also seeks the implementation of employee training, policies, and procedures that are non-discriminatory and not designed to harass, humiliate, or banish customers like Ms. Frank.

## JURISDICTION & VENUE

8. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims that arise out of the same nucleus of facts and circumstances as the subject Federal claims.

9. Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 (B) in that the transaction or occurrence giving rise to this lawsuit occurred in the State of New York.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the NYSHRL, NYCHRL, N.Y. Exec. Law, Article 15 (Executive Law § 290 et seq.), and Civil Rights Law 40-b. The remedies provided by NYSHRL and NYCHRL against discrimination are not exclusive and state administrative remedies. Such remedies do not need to be exhausted in connection with a lawsuit commenced pursuant to the Federal Civil Rights Act.

## THE PARTIES

11. At all times material hereto, Plaintiff, EMMA FRANK, was and is a resident of Kings County, New York. She resides in the building adjacent to Foodtown and shops regularly in the subject grocery store for her daily groceries.

12. Ms. Frank has at all times had a "qualified disability" under Title III of the ADA; Ms. Frank carries a diagnosis of post-traumatic stress disorder (PTSD) due to sexual assault and as a result is an individual with a disability which substantially limits her major life activities. Specifically, as a consequence of her PTSD, Ms. Frank experiences debilitating and painful panic attacks. Ms. Frank's disability falls within the meaning of the laws of the NYSHRL and NYCHRL. Specifically, her PTSD substantially interferes the major life activities of working and caring for herself. Ms. Frank utilizes a service animal, a black/brown Doberman Pinscher, to detect the onset of her panic attacks and provide services such as deep pressure therapy, in which the dog uses her body weight to alleviate panic symptoms, medication retrieval, and assistance in finding an exit when in a place of public accommodation, such as Foodtown. The

use of a service dog in this manner was recommended by Ms. Frank's physician as an aid for her PTSD

13. Defendant, 54 NOLL LLC d/b/a Foodtown, a New York limited liability company, is authorized to conduct, and is conducting business within the County of Kings, State of New York, which is within the confines of the Eastern District.

14. The supermarket is commonly referred to and known as Foodtown, which is located at 54 Noll Street, Brooklyn, New York 11216.

15. Upon information and belief, Defendant is the owner, lessee and/or operator of Foodtown, which is the subject of this lawsuit.

16. Foodtown is a place of "public accommodation" as that term is defined under the ADA.

17. Prior to the commencement of this action, Plaintiff personally visited Foodtown, as a patron to purchase groceries.

18. Ms. Frank approximates that she visited Foodtown five (5) times per week starting from January 25, 2024 until the date of the incident on October 21, 2024.

19. On October 21, 2024, Plaintiff was denied full access to and enjoyment of the facilities at Foodtown, as well as any accommodations offered to the public therein.

20. Plaintiff was restricted and limited due to her disability, thereby suffering an injury in fact.

21. Specifically, upon her arrival at Foodtown an employee and representative of Defendant publicly demanded that Plaintiff produce documentation and/or identification to substantiate her use of a service animal.

22. Shortly thereafter, Ms. Frank was removed and escorted out of Foodtown because of Defendant's policy prohibiting dogs, including service animals.

5

23. As a result of this offensive and illegal demand, Ms. Frank experienced tremendous pain, shame, and public humiliation.

24. Defendant continues to deny Plaintiff equal access to Foodtown. Therefore, Defendant has prevented Ms. Frank from using and enjoying the Foodtown.

25. Defendant's policy of removing and escorting out individuals who utilize service animals, and/or requiring them to provide documentation or identification to justify one's use of a service animal, is discriminatory on its face. This policy discriminates against individuals with disabilities, in direct violation of the ADA Laws and other applicable federal and state laws.

26. As a result, Plaintiff has been denied full access to, and full enjoyment of Foodtown and/or the accommodations offered to the public therein in that Plaintiff was restricted and limited by her disabilities due to Defendant's discrimination.

27. As a result, Plaintiff suffered an injury in fact.

28. That, Plaintiff desires to return to Foodtown in the future to take advantage of the goods and services offered therein, when and if Defendant alter their discriminatory policies and make Foodtown fully accessible for Plaintiff and other individuals who rely on service animal.

29. That, Plaintiff continue to be injured in that they continue to be discriminated against due to the discriminatory policies that remain in place at Foodtown, which are in violation of the ADA and New York State anti-discrimination laws.

30. Venue is proper in the Eastern District of New York because Defendant's acts of discrimination occurred in Foodtown which is located in this District.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

31. Plaintiff re-aver and re-allege the allegations set forth above, as though fully set forth herein.

32. On or about July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

33. Congress specifically found, *inter alia*, that:[1]

    i. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    ii. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    iii. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities;

    iv. Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; and,

    v. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs

---

[1] 42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

7

the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

34. Congress explicitly set forth the purpose of the ADA; to wit:[2]

    i. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    ii. Provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

    iii. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

35. The congressional legislation provided commercial enterprises with a period of one and a half years from the enactment of the statute to implement the requirements imposed under the ADA.

36. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[3]

37. Pursuant to 42 U.S.C. §1281(7) and 28 C.F.R. §36.104, Foodtown, which is subject to this action is a public accommodation because it provides good and services to the public, to wit: groceries.

38. Upon information and belief, Defendant has sufficient income to make readily achievable accessibility modifications to their policies and procedures at Foodtown.

---

[2] 42 U.S.C. § 12101(b) (1)(2) and (4).
[3] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

39. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated Federal regulations to implement the requirements of the ADA (the "ADAAG").[4]

40. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[5]

41. Plaintiff intends to return to Foodtown because the grocery store is adjacent to her building, where she resides and this is the closest grocery store to purchase groceries. Plaintiff also enjoys Foodtown's amenities, including its fresh coffee, sandwiches and sushi.

42. Plaintiff suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, as a result of this incident.

43. Foodtown is legally required to be, ***but is not***, in compliance with the ADA and/or ADAAG.

44. That, Defendant has failed to comply with Title III of the ADA, 42 U.S.C. § 12182 (b)(2)(A)(II), wherein they refused and failed "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

45. That, Defendant unlawfully discriminated against Plaintiff by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Foodtown.[6]

---

[4] 28 C.F.R. Part 36.
[5] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).
[6] 42 U.S.C. 12182(b)(1)(A)(I)

46. Plaintiff has attempted to use and enjoy Foodtown, but have been prohibited from doing so, because of her disability; specifically, Plaintiff was unlawfully and publicly interrogated concerning the nature of her service animal, in violation of 28 C.F.R. § 36.302(c)(6), and escorted out of the supermarket as a result of her service animal, in violation of 28 C.F.R. §36.302(c)(7).

47. Plaintiff suffered public humiliation, embarrassment, and anguish because of Defendant's policies, which prevented her, as an individual who relies on a service animal from staying in Foodtown without being subjected to harassing and unlawful interrogation regarding the nature of her disability and service animal.

48. Defendant's policies constitute violations under the ADA Laws. These violations, which include but are not limited to those enumerated herein, prohibit Plaintiff from using and enjoying Foodtown, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

49. Defendant utilizes standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

50. Remediating the ADA and/or ADAAG violations by implementing policies and procedures and employee staff training for patrons who utilize service animal in connection with disabilities, as set forth herein is both technically feasible and readily achievable.

51. Plaintiff intends to visit Foodtown in the future and upon Defendant's compliance with an Order of this Court requiring that Defendant remedy the subject ADA violations so that Plaintiff may use and enjoy the goods, services, facilities, privileges, advantages and/or accommodations offered at Foodtown. However, in light of Plaintiff's disability, unless and until Foodtown is brought into compliance with the ADA Laws, Plaintiff will remain unable

to fully, properly, and safely use and enjoy Foodtown, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

52. As a result of the foregoing, Defendant has discriminated against, and continue to discriminate against Plaintiff, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of Foodtown.

53. Defendant's discrimination is specifically prohibited by 42 U.S.C. § 12182, *et seq*.

54. Moreover, Defendant will continue to discriminate against Plaintiff, and others similarly situated, unless and until they are compelled by this Court to permit Plaintiff to shop for groceries at Foodtown with her service animal and remediate their discriminatory policies that violate the ADA and/or ADAAG, including but not limited to those specifically set forth herein, and to make Foodtown, accessible to and usable by persons with disabilities, including Plaintiff.

55. Plaintiff is without adequate remedy at law, and are suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm unless and until Defendant is required to remove the ADA and New York State discriminatory violations that exist upon Foodtown, including but not limited to those set forth herein.

56. This Court is vested with authority to grant injunctive relief sought by Plaintiff herein, including entry of an order requiring alteration and modification of Defendant's employee training, policies and procedures for operating Foodtown, so as to make it readily accessible to and useable by individuals with disabilities, including but not limited to Plaintiff to the extent required by ADA and/or ADAAG.

57. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorneys' fees, costs, and litigation expenses, all of which are recoverable against Defendant.[7]

58. Pursuant to the ADA, Plaintiff is entitled to have her reasonable attorneys' fees, costs and expenses paid by Defendant.

59. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL, N.Y. EXEC. LAW ART. 15

60. Plaintiff re-aver and re-allege the allegations set forth above, as though fully set forth herein.

61. Ms. Frank is diagnosed with post-traumatic stress disorder, that has resulted in significant disabilities that impede her abilities to work and care for herself unassisted.

62. Therefore, Plaintiff has disabilities within the meaning of N.Y. Exec. Law § 296(21).

63. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

64. The New York State Human Rights Law provides:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation...because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any

---

[7] 42 U.S.C. §§ 12205, 12117

>such place shall be refused, withheld from or denied to any person on account of … disability … [8]

65. The NYCHRL provides:

>It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived…disability…of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of …disability…[9]

66. In 2019, the New York legislature enacted legislation that provides the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether Federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

67. The amendment of Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

68. Foodtown is a place of public accommodation as defined by the NYSHRL and NYCHRL because it owns and operates a public facility.

69. Plaintiff visited Foodtown and encountered discriminatory policies and procedures that acted as disability barriers described herein, as well as hostile employee interactions.

---

[8] NYS Exec. Law § 296 (2) (a).

[9] NYC Admin Code § 8-107(4)(a)

70. By maintaining policies and procedures that discriminate against people with disabilities, and due to Defendant's lack of employee training through the actions described above, Defendant has, directly or indirectly, refused, withheld, and/or denied to Plaintiff, because of her disability the accommodations, advantages, facilities or privileges thereof provided at Foodtown.

71. Defendant discriminated against Plaintiff in violation of NYSHRL and NYCHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation due to their discriminatory policies and procedures with respect to service animal.

72. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

73. Plaintiff has been damaged and will continue to be damaged by this discrimination in an amount to be determined at trial.

74. Plaintiff is also entitled to reasonable attorneys' fees and costs.

75. Plaintiff respectfully requests a judgment pursuant to N.Y. Exec. Law § 297, including compensatory damages contemplated by § 297(9).

76. Plaintiff seek a judgment pursuant to N.Y. Exec. Law §297, including damages pursuant to § 297(9) thereof.

### THIRD CAUSE OF ACTION
### <u>VIOLATION OF CIVIL RIGHTS LAW ART. 4</u>

77. Plaintiff re-aver and re-allege the allegations set forth above, as though fully set forth herein.

78. Plaintiff served notice thereof upon the attorney general as required by Civil Rights Law §41.

79. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner,

lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . ."

80. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

81. Plaintiff is within the jurisdiction of New York because Ms. Frank resides in Kings County, State of New York, which is within the confines of the Eastern District.  Plaintiff

82. . Defendant target New York citizens in New York State and is a sales establishment and public accommodation within the definition of Civil Rights Law § 40-c(2). Foodtown provides services, privileges, and/or advantages of Defendant.

83. Defendant is subject to the Civil Rights Law because they own and operate Foodtown.

84. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

85. Defendant is violating Civil Rights Law § 40-c(2) by unlawfully demanding Plaintiff produce documentation to demonstrate their basis for using service animal, under threat of being removed and escorted out of the grocery store.

86. This discrimination denies patrons with disabilities full and equal access to the facilities, goods, and services that Defendant makes available to members of the public without disabilities.

87. To make Foodtown accessible to individuals with disabilities, Defendant needs to immediately cease and discontinue their existing unlawful policies and procedures, which unlawfully subject individuals who rely on service animal to harassing interrogation and exclusion.

88. Ordering Defendant to ensure Foodtown becomes accessible by making such modifications, implementing such policies and procedures and properly training their employees would not fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

89. In addition, Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby…"

90. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

91. As such, Defendant discriminate, and will continue in the future to discriminate against Plaintiff on the basis of her disability and therefore, she is being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

92. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 et seq. for each and every offense.

## **INJUNCTIVE RELIEF**

93. Plaintiff will continue to experience unlawful discrimination because of Defendant's failure to comply with the ADA, NYSHRL, and Civil Rights Law.

94. Pursuant to 42 U.S.C. § 12188, this Honorable Court is vested with the authority to grant injunctive relief in favor of Plaintiff, including but not limited to the issuance of an Order to (a) alter Foodtown so that it is made readily accessible to, and useable by, all individuals with disabilities, including Plaintiff, as required pursuant to the ADA, NYSHRL and NYCHRL; (b)

requiring that Defendant implement policies and procedures for individuals with disabilities who utilize service animal; (c) close Foodtown until the requisite modifications are complete and Foodtown is compliant under the ADA and New York State laws.

95. Therefore, injunctive relief is necessary to order Defendant to alter and modify their place of public accommodation, their policies, business practices, operation, policies and procedures.

96. Injunctive relief is also necessary to make Foodtown readily accessible and useable by Plaintiff in accordance with the ADA and NYSHRL.

## JURY DEMAND

97. Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant and requests the following injunctive and declaratory relief:

a) A declaration that Foodtown owned, leased, operated, controlled and/or administrated by Defendant is in violation of the ADA and the NYSHRL, NYCHRL, Executive Law and Civil Rights Law;

b) An Order requiring Defendant to evaluate and neutralize their policies, practices and procedures towards individuals with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to Foodtown;

c) An Order requiring Defendant undertake and complete a program of actions as may be necessary, to remediate and eliminate all ADA and ADAAG violations found at trial to be present upon Foodtown;

17

d) A declaration that Defendant own, maintain and/or operate their Foodtown in a manner which discriminates against individuals with disabilities and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* Executive Law § 296, *et seq.,* and the laws of New York;

e) An Order requiring Defendant to implement employee staff training and policies and procedures to make Foodtown accessible to and useable by individuals with disabilities as required pursuant to Title III of the ADA, the ADAAG, NYSHRL, NYCHRL, Executive Law and Civil Rights Law;

f) Requiring that Foodtown be closed to the general public until such time as it complies with all ADA Laws, requirements, including but not limited to complete remediation of its employee training, policies and procedures at Foodtown;

g) An Order issuing a permanent injunction ordering Defendant to close Foodtown and cease all business until Defendant remove all violations under the ADA Laws, including but not limited to the violations set forth herein;

h) Find that Plaintiff is a prevailing party and award reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of Plaintiff, and award such pursuant to the ADA, NYSHRL and NYCHRL.

i) Award monetary damages in favor of Plaintiff to the maximum amount permitted by the NYSHRL, NYCHRL, Executive Law and Civil Rights Law, as well as, compensatory and punitive damages;

j) Granting Plaintiff such other and further relief, as the Court deems just under the circumstances;

k) Granting Plaintiff's Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity; and

l) For such other and further relief that this Court deems just, necessary and proper.

Dated: November 4, 2024                                   Respectfully Submitted,

**BASHIAN & PAPANTONIOU P.C.**
*Attorneys for Plaintiff*
1225 Franklin Avenue, Ste. 325
Garden City, NY 11530
Tel:    (516) 279-1554
Fax:   (516) 213-0339
**By:** */s/ Erik M. Bashian, Esq.*
**ERIK M. BASHIAN, ESQ. (EB7326)**
eb@bashpaplaw.com


**LAW OFFICES OF NOLAN KLEIN, P.A.**
*Attorneys for Plaintiff*
5550 Glades Road, Ste. 500
Boca Raton, FL 33431
Tel:    (954) 745-0588
By:/s/ Nolan Klein
NOLAN KLEIN, ESQ. (NK 4223)
klein@nklegal.com
amy@nklegal.com

19

## **VERIFICATION**

  Emma Frank, hereby verifies and says that I am a Plaintiff in the above-captioned case. I have reviewed the allegation and they are true and correct to the best of my knowledge, information, and belief.

Dated: November 4, 2024

DocuSigned by:
[signature]
6749A855B8534F5...
_____
Emma Frank
